UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| STERLING NATIONAL BANK, | ) |
| | ) |
| Plaintiff, | ) Case No. |
| | ) |
| v. | ) Claim amount: $395,000.00, plus treble |
| | ) damages, attorneys' fees and costs |
| 185 WEST MAIN FINANCIAL, LLC, | ) |
| PLASTICS MACHINERY GROUP, INC., | ) |
| BRIAN COLL, | ) |
| DONALD KRUSCHKE and | ) |
| PENINSULA PLASTICS COMPANY, | ) |
| INC., | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff STERLING NATIONAL BANK ("Sterling"), for its Complaint against Defendants 185 WEST MAIN FINANCIAL, LLC ("185 West Main"), PLASTICS MACHINERY GROUP, INC. ("Plastics Machinery"), BRIAN COLL ("Coll"), DONALD KRUSCHKE ("Kruschke") and PENINSULA PLASTICS COMPANY, INC. ("Peninsula"), states as follows:

## INTRODUCTION

Sterling brings this lawsuit against 185 West Main, Plastics Machinery, Coll and Kruschke, for their conversion of certain equipment that Sterling has a first priority security interest in. 185 West Main, Plastics Machinery, Coll and Kruschke sold the equipment to Peninsula, despite their knowledge of Sterling's lien, and their knowledge that 185 West Main did not have title to the equipment and did not have authority to sell the equipment to Peninsula. Sterling sues Peninsula for claim and delivery, to obtain the equipment.

1

**PARTIES**

1. Sterling is a national bank organized under the laws of the United States, with its main office located in Pearl River, New York. Sterling is chartered in the State of New York.

2. 185 West Main is an Ohio limited liability company with its principal place of business located at 185 W. Main Street, Suite A, New Concord, Ohio 43762. Upon information and belief, the sole member of 185 West Main is Coll, who is a citizen of the State of Ohio domiciled in Ohio.

3. Plastics Machinery is an Ohio corporation with its principal place of business located at 5455 Perkins Rd., Bedford Heights, Ohio 44146. Kruschke is the President and CEO of Plastics Machinery.

4. Coll is a citizen of the State of Ohio domiciled at 6399 Canterbury Way, Zanesville, Ohio 43701.

5. Kruschke is a citizen of the State of Ohio domiciled at 15675 Cothelstone Lane, Changrin Falls, Ohio 44022.

6. Peninsula is a Michigan corporation with its principal place of business located at 2800 Auburn Court, Auburn Hills, Michigan 48326.

**JURISDICTION**

7. Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to Sterling's claims occurred in this district. Specifically, as described below, KLO sold substantially all of its assets to 185 West Main in this

district, in Muskegon, Michigan. However, KLO's sale to 185 West Main did **not** include Sterling's equipment, which is the subject of this lawsuit. Sterling's equipment was located at KLO's facility in Muskegon, Michigan from 2017 until March 2020, when 185 West Main, Plastics Machinery, Coll and Kruschke converted the equipment and sold it to Peninsula. Upon information and belief, from September 2020 to January 2021, Sterling's equipment was disassembled and moved from Muskegon, Michigan to Auburn Hills, Michigan, where the equipment was reassembled and installed in Peninsula's facility.

## BACKGROUND

### A. Equipment Lease Agreement between Sterling and KLO

9. On or about December 17, 2015, non-party First National Capital, LLC ("First National"), as Lessor, and non-parties Ameriform Acquisition Company, LLC ("Ameriform") and Ameriform Acquisition Company DISC, Inc. ("DISC"), as Lessees, entered into Master Equipment Lease Agreement No. xx415 and an Amendment to Master Equipment Lease No. xx415 (collectively referred to as the "Agreement") in anticipation of entering into subsequent schedules for the financing of equipment. A true and correct copy of the Agreement is attached hereto as Exhibit 1.

10. On or about May 11, 2016, First National, as Lessor, and Ameriform and DISC, as Lessees, entered into Equipment Schedule No. 6 (the "Schedule") in connection with the Agreement for the financing of: one (1) Monark Model #R4E-TS-413-EE Four Station Rotary Pressure/Twin Sheet Former S/N M2016-01 ("Monark Equipment"); and one (1) Avian G50/80-R3-S2 Medium Sized High Speed Granulator with Back Feed Hopper ("Avian Equipment") (collectively, the "Equipment"). A true and correct copy of the Schedule is attached hereto as Exhibit 2.

3

11. On June 6, 2016, Corporation Service Company ("CSC"), as agent for First National, filed a UCC-1 Financing Statement against Ameriform and DISC, perfecting First National's first-priority security interest in the Equipment. A true and correct copy of the UCC-1 Financing Statement is attached here to as Exhibit 3.

12. On February 17, 2017, Ameriform and DISC assigned, and non-party KLO Acquisition, LLC ("KLO") assumed, all of Ameriform's and DISC's obligations under, and right, title, and interest in and to, the Agreement, Schedule, and Equipment, pursuant to an Assignment and Assumption Agreement. A true and correct copy of the Assignment and Assumption Agreement is attached hereto as Exhibit 4.

13. On February 15, 2017, CSC, as agent for First National, filed a UCC-3 Financing Statement reflecting the assignment from Ameriform and DISC to KLO. A true and correct copy of the UCC-3 Financing Statement is attached hereto as Exhibit 5.

14. On March 16, 2017, First National and KLO entered into Amendment No. 1 to the Schedule ("Amendment No. 1"), modifying some of the payment terms of the Schedule. A true and correct copy of Amendment No. 1 is attached hereto as Exhibit 6.

15. On March 23, 2017, First National and KLO entered into Amendment No. 2 to the Schedule ("Amendment No. 2") (collectively with the Schedule and Amendment No. 1, the "Schedule"), modifying some of the payment terms of the Schedule. A true and correct copy of Amendment No. 2 is attached hereto as Exhibit 7.

16. On March 23, 2017, KLO executed a Lessee Acknowledgment (Certificate of Acceptance) acknowledging the delivery and satisfactory receipt of the Equipment. A true and correct copy of the Lessee Acknowledgment (Certificate of Acceptance) is attached here at Exhibit 8.

17.     On March 29, 2017, First National assigned all of its right, title, and interest in and to the Agreement, Schedule, and Equipment to Sterling. A true and correct copy of the Assignment of Lease is attached hereto as <u>Exhibit 9</u>.

18.     On April 3, 2017, CSC, as agent for First National, filed a UCC-3 Financing Statement reflecting the assignment of the Agreement, Schedule, and Equipment from First National to Sterling. Sterling's security interest in the Equipment extended to the Equipment "and all modifications and additions thereto and replacements and substitutions therefor, in whole or in part including the insurance and proceeds thereof[.]" A true and correct copy of the UCC-3 Financing Statement is attached hereto as <u>Exhibit 10</u>.

19.     KLO failed to make the payment due on November 1, 2019 under the Agreement and Schedule to Sterling, and all payments due thereafter.

**B. KLO's sale of assets (excluding the Equipment) to 185 West Main**

20.     On February 11, 2020, KLO sold substantially all of its assets to 185 West Main, pursuant to an Asset Purchase Agreement. A true and correct copy of the Asset Purchase Agreement between KLO and 185 West Main is attached hereto as <u>Exhibit 11</u>.

21.     **Sterling's Agreement, Schedule and the Equipment were excluded from KLO's sale of assets to 185 West Main.** Under the Asset Purchase Agreement's plain terms, Sterling's Agreement, Schedule and the Equipment were excluded from the sale for the following reasons:

   a. Sterling's Agreement, Schedule and the Equipment are not listed under Exhibit A to the Asset Purchase Agreement as "Purchased Assets";

   b. Sterling's Agreement and Schedule are not listed under Exhibit D to the Asset Purchase Agreement as "Assumed Contracts";

5

    c. Because Sterling's Agreement, Schedule and the Equipment are not listed under Exhibit A or Exhibit D to the Asset Purchase Agreement, they are "Excluded Assets" under Exhibit B(i) to the Asset Purchase Agreement ("Excluded Assets . . . all personal property of Seller that is subject to PMSI financing/capital lease arrangements, other than such assets which are part of the Assumed Contracts");

    d. Sterling's Agreement and Schedule are "Unassignable Contracts" under Paragraph 10 of Exhibit H (Assignment and Assumption Agreement) to the Asset Purchase Agreement ("In the event that there are Assigned Agreements whose terms prohibit their sale, conveyance, transfer or assignment in the absence of the approval, consent or waiver of any other person (the 'Required Consents') and which Required Consents will not have been obtained at or prior to the Effective Date (the 'Unassignable Contracts'), Assignee and Assignor shall use their best efforts to obtain such Required Consents as soon as reasonably practicable after the Effective Date. Upon receipt of the Required Consent relating to an Unassignable Contract, such Unassignable Contract shall become an Assigned Agreement and be treated in accordance with this Assignment. . . . Notwithstanding the foregoing, if any Required Consent for an Unassignable Contract is not obtained within 60 days of the Effective Date (or such later date as agreed to by Assignee and Assignor in writing), such Unassignable Contract shall be deemed an Excluded Asset under the Purchase Agreement.").

<u>See</u> Asset Purchase Agreement, Exhibit 11 hereto.

22. **At the time of the sale of KLO's assets to 185 West Main, 185 West Main was aware that Sterling's Agreement, Schedule and the Equipment were excluded from the sale.** Specifically:

   a. On January 30, 2020, attorneys for KLO, 185 West Main and others exchanged emails, in which KLO's counsel provided copies of KLO's capital leases to 185 West Main – presumably, so that 185 West Main could decide whether it wanted to pay off those contracts, because the contracts were excluded from the sale under the Asset Purchase Agreement.

   b. In an email dated February 3, 2020, 185 West Main's counsel specifically asked KLO's counsel for copies of Sterling's Agreement and Schedule regarding the Equipment – presumably, so that 185 West Main could decide whether it wanted to pay off those contracts, because the contracts were excluded from the sale under the Asset Purchase Agreement.  See Exhibit 12 hereto.

   c. On February 6, 2020, Steve Smith of First National (the original lessor of Sterling's Agreement and Schedule) put Coll in touch with Andrea Sheridan, Peter Sforzo and Chris Lambert at Sterling, regarding payoff or assumption of the Agreement and Schedule.  On February 14 and 15, 2020, Chris Lambert and Coll exchanged emails about setting up a phone call to discuss 185 West Main's payoff or assumption of Sterling's Agreement and Schedule, because the contracts were excluded from the sale under the Asset Purchase Agreement.  See Exhibit 13 hereto.  However, 185 West Main never paid off or assumed Sterling's Agreement and Schedule.

23. Because Coll personally negotiated the terms of the Asset Purchase Agreement on behalf of 185 West Main, and personally contacted Sterling to discuss payoff of Sterling's

Agreement and Schedule, Coll was aware that Sterling's Agreement, Schedule and the Equipment were excluded from the sale under the Asset Purchase Agreement. <u>See</u> e.g., Exhibits 11, 12 and 13 hereto.

24. Upon information and belief, Coll is the sole member of 185 West Main. Coll's conduct and communications with Sterling, Peninsula, Plastics Machinery and Kruschke regarding the Equipment were all performed in connection with and pertinent to his employment with 185 West Main, while acting under and within the scope of Coll's authority. As such, Coll's knowledge is imputed on 185 West Main.

25. Coll personally negotiated the terms of the sale of the Equipment to Peninsula. Upon information and belief, Coll handled all substantive communications with Peninsula, Plastics Machinery and Kruschke regarding the Equipment on behalf of 185 West Main. As such, 185 West Main's knowledge is imputed on Coll.

### C. Conversion of the Equipment by 185 West Main, Plastics Machinery, Coll and Kruschke, by sale to Peninsula

26. Despite 185 West Main's knowledge that KLO did not sell the Equipment to it, and that 185 West Main did not assume or pay off the Agreement and Schedule, 185 West Main began actively attempting to sell the Equipment, working in conjunction with Plastics Machinery, Coll and Kruschke.

27. Kruschke is the President and CEO of Plastics Machinery. Kruschke's conduct and communications with Peninsula, 185 West Main and Coll regarding the Equipment were all performed in connection with and pertinent to his employment with Plastics Machinery, while acting under and within the scope of Kruschke's authority. As such, Kruschke's knowledge is imputed on Plastics Machinery.

28. Kruschke personally negotiated the terms of the sale of the Equipment to Peninsula. Upon information and belief, Kruschke handled all substantive communications with Peninsula, 185 West Main and Coll regarding the Equipment on behalf of Plastics Machinery. As such, Plastics Machinery's knowledge is imputed on Kruschke.

29. Upon information and belief, 185 West Main and/or Coll communicated to Plastics Machinery and/or Kruschke that 185 West Main: (a) did not purchase the Equipment from KLO; (b) did not have title to the Equipment; and (c) did not pay off or assume Sterling's Agreement and Schedule.

30. Upon information and belief, 185 West Main and/or Coll communicated to Plastics Machinery and/or Kruschke that 185 West Main wanted Plastics Machinery to market the Equipment to sell to a buyer, despite 185 West Main's lack of title to the Equipment.

31. On or about February 24, 2020, Plastics Machinery began marketing certain equipment to Peninsula through a proposal, under which Plastics Machinery acted as a broker for Peninsula to locate certain equipment. The proposal included Sterling's Equipment, though 185 West Main had not purchased the Equipment from KLO or Sterling, and had not paid off or assumed the Agreement and Schedule. A true and correct copy of the proposal from Kruschke at Plastics Machinery to Peninsula is attached hereto as Exhibit 14.

32. On or about February 24, 2020, Peninsula signed the proposal with Plastics Machinery. See Exhibit 15 hereto.

33. On February 17 and 24, 2020, Richard Jositas of Peninsula requested that Kruschke of Plastics Machinery provide proof that the Equipment was unencumbered by any liens. Kruschke provided reassurances to Mr. Jositas that Plastics Machinery would provide the requested documentation. See Exhibit 16 hereto.

34. On February 25, 2020, Kruschke sent an email to Ryan Victory and Richard Jositas of Peninsula, producing a redacted copy of the Asset Purchase Agreement with KLO, "to show that we have free and clear title" to the Equipment. Kruschke copied Coll and 185 West Main's counsel, Jeff Patter, to the email. See Exhibit 17 hereto.

35. Kruschke, Coll, 185 West Main and Plastics Machinery all were aware that under the Asset Purchase Agreement, KLO did **not** sell Sterling's Equipment to 185 West Main, and that 185 West Main did **not** pay off Sterling's Agreement and Schedule.

36. Upon information and belief, Kruschke sent the Asset Purchase Agreement to Mr. Jositas and Mr. Victory of Peninsula to give the false impression that KLO sold the Equipment to 185 West Main under the Asset Purchase Agreement, even though the Equipment was excluded from the sale.

37. Coll was copied to Kruschke's February 25, 2020 email to Peninsula, claiming that "we [185 West Main] have free and clear title" to the Equipment. Coll was aware that: (a) 185 West Main did not have free and clear title to the Equipment; and (b) the Equipment was encumbered by Sterling's first priority security interest. However, Coll failed to advise Peninsula of either fact, and gave Peninsula the false impression that Kruschke's email was truthful, when Coll knew Kruschke's statements were false.

38. On March 5, 2020, 185 West Main sold the Equipment to Peninsula pursuant to a Bill of Sale. The sale was arranged and brokered by Plastics Machinery, with Kruschke negotiating the terms of the sale and handling all relevant communications with Peninsula. A true and correct copy of the Bill of Sale is attached hereto as Exhibit 18.

39. Peninsula paid 185 West Main $350,000.00 for the Monark Equipment and $45,000.00 for the Avian Equipment, for a total of $395,000.00 for Sterling's Equipment.

Peninsula also paid 185 West Main $350,000.00 for another piece of Monark equipment, unrelated to Sterling's Equipment.  See Exhibit 19 hereto; see also Exhibit 15.

40. In the Bill of Sale, 185 West Main falsely represented that it: (a) "is conveying good and valid title to all Assets, free and clear of all encumbrances, debts, mortgages, attachments, pledges, charges, claims, and liens of any kind"; and (b) "has the right to sell the Assets to [Peninsula] and shall warrant and defend the right against the lawful claims and demands of all persons[.]" See Exhibit 18 hereto.

41. Kruschke, Coll, 185 West Main and Plastics Machinery all were aware that the representations contained in the Bill of Sale were false, as they knew that: (a) Sterling had an outstanding lien on the Equipment; and (b) that 185 West Main had no right to sell the Equipment, as the Equipment was excluded from KLO's sale of assets under the Asset Purchase Agreement, and 185 West Main had not paid off Sterling's Agreement and Schedule.

42. Six weeks after the sale of the Equipment to Peninsula, on April 14, 2020, Coll emailed Chris Lambert at Sterling, indicating again that he wanted to pay off the Sterling Agreement and Schedule for the Equipment. **At this point, 185 West Main had already converted and sold the Equipment to Peninsula, but presumably was attempting to pay off the Agreement and Schedule to obtain unencumbered title to the Equipment after the fact.** See Exhibit 20 hereto.

43. Coll sent the April 14, 2020 email to Sterling, because 185 West Main and Coll knew that 185 West Main did not obtain the rights to the Equipment under the Asset Purchase Agreement with KLO.

44. 185 West Main never paid off the Sterling Agreement and Schedule, and never paid Sterling for the Equipment.

45. Peninsula is currently in possession of Sterling's Equipment.

### COUNT I – CONVERSION AGAINST 185 WEST MAIN FINANCIAL, LLC, PLASTICS MACHINERY GROUP, INC., BRIAN COLL and DONALD KRUSCHKE

46. Sterling realleges and reasserts Paragraphs 1 through 45 of its Complaint as though fully set forth herein.

47. 185 West Main, Plastics Machinery, Coll and Kruschke are liable for conversion under Michigan common law.

48. 185 West Main, Plastics Machinery, Coll and Kruschke wrongfully exerted dominion over Sterling's Equipment by selling the Equipment to Peninsula, though they knew that the Equipment was excluded from the sale of assets by KLO to 185 West Main.

49. 185 West Main, Plastics Machinery, Coll and Kruschke wrongfully exerted dominion over Sterling's Equipment by selling the Equipment to Peninsula, though they knew that: (a) Sterling had a first priority security interest in the Equipment; and (b) 185 West Main had not paid off Sterling's Agreement and Schedule.

50. In fact, at the time of the sale of the Equipment to Peninsula, Sterling's UCC-3 Financing Statement against the Equipment and KLO was on file with the Michigan Secretary of State, and 185 West Main, Plastics Machinery, Coll and Kruschke were aware of Sterling's UCC-3 Financing Statement. See Exhibit 10 hereto.

51. Despite knowledge of Sterling's first priority security interest in the Equipment, 185 West Main, Plastics Machinery, Coll and Kruschke sold the Equipment to Peninsula for $395,000.00.

52. 185 West Main, Plastics Machinery, Coll and Kruschke never remitted the proceeds of the sale of the Equipment to Sterling, even after Sterling's demand.

53. After their March 5, 2020 sale of the Equipment to Peninsula, 185 West Main, Plastics Machinery, Coll and Kruschke continued to be aware of Sterling's first priority security interest in the Equipment, as Coll contacted Sterling on April 14, 2020, to discuss pay off the Sterling Agreement and Schedule for the Equipment.

54. However, 185 West Main, Plastics Machinery, Coll and Kruschke never paid off the Sterling Agreement and Schedule, and never paid Sterling for the Equipment.

55. 185 West Main, Plastics Machinery, Coll and Kruschke also are liable for conversion under MCL § 600.2919a, made applicable to this proceeding pursuant to 28 U.S.C. § 1652.

56. 185 West Main, Plastics Machinery, Coll and Kruschke converted the Equipment for their own use, as they intended to wrongfully sell the Equipment and retain the proceeds of the sale.

57. 185 West Main, Plastics Machinery, Coll and Kruschke converted the Equipment, as they knew that 185 West Main did not acquire the Equipment from KLO pursuant to the Asset Purchase Agreement, as the Equipment was excluded from the sale.

58. 185 West Main, Plastics Machinery, Coll and Kruschke converted the Equipment, as they sold the Equipment to Peninsula, despite knowledge of Sterling's first priority security interest in the Equipment, and 185 West Main's failure to pay off the Agreement and Schedule.

59. When 185 West Main and Coll sold the Equipment to Peninsula, they had knowledge that the Equipment had been converted.

60. When Plastics Machinery and Kruschke brokered the sale of the Equipment to Peninsula, they had knowledge that the Equipment had been converted.

61. As a corporate officer of 185 West Main, Coll is personally liable for the intentional tort of conversion by 185 West Main.

62. As a corporate officer of Plastics Machinery, Kruschke is personally liable for the intentional tort of conversion by Plastics Machinery.

63. As a result of the conversion of the Equipment by 185 West Main, Plastics Machinery, Coll and Kruschke, Sterling suffered damages in the amount of $395,000.00.

64. Under Sterling's UCC-3 Financing Statement, Sterling's lien attaches to both the Equipment and any "proceeds" of the sale of the Equipment. See Exhibit 10 hereto.

WHEREFORE, Plaintiff STERLING NATIONAL BANK respectfully requests that the Court enter judgment in its favor and against Defendants 185 WEST MAIN FINANCIAL, LLC, PLASTICS MACHINERY GROUP, INC., BRIAN COLL and DONALD KRUSCHKE, jointly and severally, in the amount of $395,000.00, plus treble damages of up to three times Sterling's actual damages under MCL § 600.2919a, plus attorneys' fees and costs, as well as all other such relief which this Court deems just.

### COUNT II – CLAIM AND DELIVERY
### AGAINST PENINSULA PLASTICS COMPANY, INC.

65. Sterling realleges and reasserts Paragraphs 1 through 64 of its Complaint as though fully set forth herein.

66. This claim is brought pursuant to MCL § 600.2920, made applicable to this proceeding pursuant to 28 U.S.C. § 1652.

67. Pursuant to the Agreement, Schedule, and the UCC Financing Statements, Sterling has a first-priority security interest in the Equipment.

68. Due to KLO's default under the Agreement and Schedule, Sterling is entitled to return of: one (1) Monark Model #R4E-TS-413-EE Four Station Rotary Pressure/Twin Sheet

Former S/N M2016-01; and one (1) Avian G50/80-R3-S2 Medium Sized High Speed Granulator with Back Feed Hopper, including any upgrades, additions, accessions, attachments, substitutions, or replacement.

69. The Equipment consists of independent pieces of property.

70. Upon information and belief, the Equipment has an aggregate value which is less than the indebtedness due and owing to Sterling.

71. Peninsula is detaining the Equipment that is subject to Sterling's first-priority security interest.

72. The Equipment has not been taken for any tax, assessment, or fine levied by virtue of any law of the State of Michigan against the property of Sterling, nor seized by virtue of an execution, attachment, or any lawful process against the goods and chattels of Sterling subject to such lawful process, nor held by virtue of any order for claim and delivery against Sterling.

WHEREFORE, Plaintiff STERLING NATIONAL BANK respectfully requests that this Court enter an Order directing the U.S. Marshall to use all necessary force to repossess the Equipment, or any portion thereof, from 2800 Auburn Court, Auburn Hills, Michigan 48326, or wherever it may be found, and enter a judgment against Defendant PENINSULA PLASTICS COMPANY, INC., for the value of any Equipment not so returned, plus attorneys' fees and costs, as well as all other and further relief which this Court deems just.

July 6, 2021

*/s/ Lisa A. Hall*
Lisa A. Hall (P70200)
Plunkett Cooney
Attorneys for Plaintiff
333 Bridge Street NW, Suite 530
Grand Rapids, MI  49504
(616) 752-4615
lhall@plunkettcooney.com

Open.27014.02456.26744971-1